## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES GIACOBBE,<br><br>        Plaintiff,<br><br>    v.<br><br>TETRAPHASE PHARMACEUTICALS,<br>INC., L. PATRICK GAGE, LARRY<br>EDWARDS, GAREN BOHLIN, STEVEN<br>BOYD, JEFFREY A. CHODAKEWITZ,<br>JOHN G. FREUND, GERRI HENWOOD,<br>GUY MACDONALD, KEITH MAHER, and<br>NANCY J. WYSENSKI,<br><br>        Defendants. | **CASE NO.: 1:20-cv-10762**<br><br>**COMPLAINT FOR<br>VIOLATION OF FEDERAL<br>SECURITIES LAWS** |

Plaintiff Charles Giacobbe ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

### NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff, a stockholder of Tetraphase Pharmaceuticals, Inc. ("Tetraphase" or the "Company") brings this action against the members of Tetraphase's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, and 17 C.F.R. § 240.14a-9, arising out of their attempt to merge the Company with AcelRx Pharmaceuticals, Inc. ("Parent") through Parent's wholly-owned subsidiary, Consolidation Merger Sub, Inc. ("Merger Sub").

2.     On March 15, 2020, the Company announced that it had entered into a definitive agreement and plan of merger ("Merger Agreement") on March 15, 2020, by which the Company

will merge with Parent (the "Proposed Transaction").  Under the terms of the Merger Agreement, Tetraphase stockholders will receive 0.6303 shares of Parent common stock and one contingent value right in exchange for each share of Tetraphase common stock (the "Merger Consideration").

3.  On April 6, 2020, the Board approved the filing of a Form S-4 Registration Statement (the "Registration Statement") by Parent with the United States Securities & Exchange Commission.  The Registration Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding (i) the financial projections of Tetraphase, Parent, and the pro forma combined Company that were relied upon by the Board and Tetraphase's financial advisor, Janney Montgomery Scott LLC ("Janney") in recommending the Proposed Transaction; (ii) the financial analyses conducted by Janney that supported its fairness opinion; (iii) the confidentiality agreements entered into between Tetraphase and other potential bidders during the process leading to the Merger Agreement; and (iv) the identity of the Company's myriad financial advisors during the previous two years.

4.  Without additional information the Registration Statement is materially misleading in violation of federal securities laws.

5.  By unanimously approving the Proposed Transaction and authorizing the issuance of the Registration Statement, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Registration Statement was materially false and/or misleading. The Registration Statement is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6.  The stockholder vote on the Proposed Transaction is forthcoming (the "Stockholder Vote"). Under the Merger Agreement, following a successful Stockholder Vote, the Proposed Transaction will be consummated.

7.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the Stockholder Vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of Tetraphase common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9.     Personal jurisdiction exists over each Defendant either because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the conduct at issue had an effect in this District, as the Company is headquartered in this District.

## PARTIES AND RELEVANT NON-PARTIES

11.    Plaintiff is, and has been at all relevant times, the owner of Tetraphase common stock.

12.    Defendant Tetraphase is a Delaware corporation with principal executive offices at 480 Arsenal Way, Watertown, Massachusetts 02472. Tetraphase is a biopharmaceutical company using proprietary chemistry technology to develop and commercialize tetracyclines for serious and life-threatening conditions. The Company's pipeline also includes TP-271 IV and Oral, and TP-6076 IV only, which are Phase 2 ready, and TP-2846, which is in preclinical testing for acute

myeloid leukemia. Tetraphase common stock is listed for trading on the NASDAQ Global Select Market under the ticker symbol "TTPH."

13.    Defendant Garen Bolin has served as a director of the Company since July 2010.

14.    Defendant Steven Boyd has served as a director of the Company since January 2020.

15.    Defendant Jeffrey A. Chodakewitz has served as a director of the Company since June 2014.

16.    Defendant Larry Edwards has served as the Company's Chief Executive Officer since August 2019.

17.    Defendant John G. Freund has served as a director of the Company since October 2012.

18.    Defendant L. Patrick Gage has served as a director of the Company and as Chairman of the Board since December 2011.

19.    Defendant Gerri Henwood has served as a director of the Company since April 2015.

20.    Defendant Keith Mahler has served as a director of the Company since January 2020.

21.    Defendant Guy McDonald has served as a director of the Company since January 2008.

22.    Defendant Nancy J. Wysenski has served as a director of the Company since March 2014.

23.    Defendants referenced in ¶¶ 13 through 22 are collectively referred to as Individual Defendants and/or the Board.

## FURTHER SUBSTANTIVE ALLEGATIONS

24.     On March 16, 2020, the Company issued a press release announcing the Proposed

Transaction. The Press Release read in relevant part:

> WATERTOWN, Mass.--(BUSINESS WIRE)--Tetraphase Pharmaceuticals, Inc. (Nasdaq: TTPH), a biopharmaceutical company focused on commercializing its novel tetracycline XERAVA to treat serious and life-threatening infections, today announced the execution of a definitive merger agreement pursuant to which AcelRx Pharmaceuticals (Nasdaq: ACRX) would acquire Tetraphase in a stock for stock transaction. Under the terms of the agreement, Tetraphase stockholders will receive, for each share of Tetraphase common stock, 0.6303 of a share of AcelRx common stock, valued at approximately $14.4 million as of the close of trading on March 13, 2020, and one contingent value right (CVR), which would entitle the holders to receive aggregate payments of up to $12.5 million for the achievement of future XERAVA™ net sales milestones starting in 2021. The transaction was unanimously approved by both the AcelRx and Tetraphase boards of directors and is expected to close in the second quarter of 2020. Select Tetraphase stockholders and warrant holders, including Armistice Capital, LLC, holding in the aggregate approximately 31% of Tetraphase's outstanding common stock, have signed voting agreements in favor of the transaction.
>
> Concurrently with signing the merger agreement, Tetraphase and AcelRx entered into a co-promotion agreement to market and promote XERAVA™ for the treatment of complicated intra-abdominal infections (cIAI) and DSUVIA® for the treatment of acute pain in medically supervised settings. The co-promotion agreement will allow the AcelRx and Tetraphase teams to benefit immediately from the promotion of multiple products, leverage each company's customer relationships, and create efficiencies among commercial teams. The combined sales team will cover in excess of 70% of each company's originally targeted hospitals.
>
> "This transaction is an important move forward for Tetraphase and more importantly, for XERAVA and the patients who need this treatment," said Larry Edwards, President and Chief Executive Officer of Tetraphase. "We are excited to collaborate with AcelRx, a partner whose strategic goals complement our own. We continue to believe that XERAVA is a key addition to the hospital anti-infective armamentarium, and believe that together with AcelRx we will be able to more effectively bring new treatments to patients in healthcare institutions."
>
> "We are excited to have reached agreement with Tetraphase, a company with a well-established U.S. salesforce and a high-growth hospital product that complements AcelRx's commercial strategy," said Vince Angotti, Chief

Executive Officer of AcelRx. "This transaction highlights our focus on efficiently commercializing DSUVIA with a salesforce promoting multiple products and is the first step in our plan to create a growth platform to further consolidate hospital-focused pharmaceutical companies and products. We look forward to integrating XERAVA and the existing Tetraphase commercial infrastructure with our own as we strengthen our position on promoting innovative products to healthcare institutions allowing patients access to new and improved treatments."

Based on the closing price of AcelRx stock on March 13, 2020, the stock consideration to be received by Tetraphase equityholders is valued at approximately $14.4 million, with approximately $7.4 million of this amount allocated to the Company's outstanding common stock warrants. In the merger, Tetraphase stockholders would also be entitled to receive, for each share of Tetraphase common stock, one non-tradeable CVR, the holders of which will be entitled to receive payments of up to an additional $12.5 million in the aggregate upon the achievement of net sales of XERAVA™ in the United States of at least (i) $20 million during 2021, (ii) $35 million during any year ending on or before December 31, 2024 and (iii) $55 million during any year ending on or before December 31, 2024. The total cost synergy expectation from the combined company exceeds 90% of the Tetraphase operating expenses and are expected to be fully realized in 2021.

Closing of the transaction is subject to specified closing conditions, including Tetraphase having a minimum amount of net cash as of the closing and approval by Tetraphase stockholders. Upon the closing of the transaction, Tetraphase will become a privately held company and shares of Tetraphase's common stock will no longer be listed on any public market. Subject to certain limited exceptions, the CVRs will be non-transferable.

Janney Montgomery Scott is acting as financial advisor to Tetraphase and has rendered a fairness opinion to Tetraphase's board of directors in connection with the transaction. Wilmer Cutler Pickering Hale and Dorr LLP is acting as legal advisor to Tetraphase in connection with the transaction.

**The Registration Statement Misleads Tetraphase Stockholders by Omitting Material Information**

25.     On April 6, 2020, the Board approved the filing of the materially misleading and incomplete Registration Statement with the SEC. Designed to convince Tetraphase's stockholders to vote in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning the financial projections of the Company, AcelRx and the pro forma combined company, the financial analyses conducted by Janney, the terms of

confidentiality agreements entered into with other potential bidders for the Company, and the identity of the Company's financial advisors other than Janney.

### Financial Projections

26.     The summary of the financial analyses conducted by the Company's financial advisor, Janney, states that the advisor reviewed "certain historical financial non-GAAP adjustments and financial forecasts prepared by the management of Tetraphase and the management of AcelRx."

27.     However, the Registration Statement omits the projected line items used to calculate the projected unlevered free cash flow and EBIT for the Company for the years 2020 through 2024.  The omission is materially misleading because the cash flow projections that formed the basis for Janney's analyses were management's best estimates of the Company's future results, and did not originate from some other source.

28.     The Registration Statement also fails to reconcile all projected non-GAAP financial metrics to GAAP financial metrics for the years 2020 through 2024 for Tetraphase.

29.     Further, Tetraphase stockholders will receive AcelRx stock as Merger Consideration, and thus must know the actual value of that stock in order to evaluate the Proposed Transaction. But the Registration Statement fails to disclose the line items used to calculate the projected unlevered free cash flow and EBIT for AcelRx for the years 2020 through 2024, as well as any reconciliation of the non-GAAP financial metrics for the projections of AcelRx, despite Janney preparing financial analyses of Tetraphase, AcelRx, and the combined Company using such projections.

30.     The above-referenced omitted information relating to the financial projections of the parties to the Proposed Transaction significantly alter the total mix of information available to

Tetraphase's stockholders regarding the future value of the Company. Thus, the omission of this projected financial information serves to prevent Company stockholders from evaluating the fairness analysis conducted by Janney, or to perform their own valuation of the Company.

### The Valuation Analyses and Fairness Opinions of Tetraphase's Financial Advisor

31.     The Registration Statement describes the fairness opinion of Janney, Tetraphase's financial advisor, and the various valuation analyses it performed in support of its opinion. However, the description of the fairness opinions and analyses of Janney fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Tetraphase stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Janney's fairness opinions in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Tetraphase stockholders.

32.     With respect to Janney's *Tetraphase Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values of the Company; (ii) Janney's basis for using an Enterprise Value/Revenue exit multiple range of 2.25x to 2.75x; (iii) the individual inputs and assumptions underlying the range of discount rates of 17.6% to 21.6%; and (iv) net debt and cash.

33.     With respect to Janney's *Pro Forma Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values used in the analysis; (ii) Janney's basis for using an Enterprise Value/Revenue exit multiple range of 2.25x to 2.75x; (iii) the individual inputs and assumptions underlying the range of discount rates of 14.7% to 18.7%; and (iv) net debt and cash.

34.     With respect to Janney's *Selected Public Companies Analysis*, the Registration Statement fails to disclose the individual multiples observed for each of the selected publicly traded companies.

35.     With respect to Janney's *Premiums Paid Analysis*, the Registration Statement fails to disclose the transactions observed by Janney and the premiums paid in each of those transactions.

36.     With respect to Janney's *Selected Precedent Transactions Analysis*, the Registration Statement omits the individual multiples observed for each of the selected precedent transactions.

37.     Defendants' failure to provide Tetraphase stockholders with the foregoing material information renders the statements in the *Opinion of Janney Montgomery Scott LLC, Tetraphase's Financial Advisor* section of the Registration Statement false and/or materially misleading.

### *The Terms of Confidentiality Agreements*

31.     The Registration Statement discloses that Tetraphase entered into a confidentiality agreement with AcelRx on July 29, 2019 "which did not include a standstill."

32.     With respect to the confidentiality agreements entered into with other potential bidders, including at least seven other companies, the Registration Statement is silent as to whether they contained standstill provisions that would prevent a public proposal, or even a "don't-ask, don't-waive" ("DADW") standstill provision that would prevent even a private overture.

33.     A "don't-ask, don't-waive" provision prevents a party from approaching the Company's Board privately to request a waiver of the standstill provision in order to submit a superior proposal. Through the use of these DADW provisions, a board might willfully blind itself to superior offers.

34.     This omission is particularly notable because the Merger Agreement prevented Tetraphase from soliciting superior alternatives to the Proposed Transaction.  Thus, the Board has willfully blinded itself to a superior offer from other bidders if the confidentiality agreements contained such a standstill or DADW provision.

38.     Such information is material as a reasonable Tetraphase stockholder would find important to their voting decision whether or not parties that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

39.     The Registration Statement also materially misleads Tetraphase stockholders by omission by refusing to name the several financial advisors retained by the Company throughout the Board's strategic review process in 2019.

40.     Apparently the Company had received the advice of several other financial advisors than Janney, including "Financial Advisor A," "Financial Advisor B," and "Financial Advisor C."

41.     These advisors were engaged by the Company for the first time as recently as December 2019. The Registration Statement's refusal to actually name them materially misleads Tetraphase stockholders regarding the potential conflicts of interest faced by these advisors, including the fees paid to them by Tetraphase, and whether AcelRx or the Company's largest stockholder, Armistice Capital, LLC, had retained them and/or paid them over the previous two years.

42.     Defendants' failure to provide Tetraphase stockholders with the foregoing material information renders the statements in the *Background of the Merger* section of the Registration Statement false and/or materially misleading.

35.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Tetraphase**

36.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Tetraphase is liable as the issuer of these statements.

38.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

39.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

40.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

41.     The Registration Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

42.     By reason of the foregoing, Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of Tetraphase within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Tetraphase and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The Registration Statement contains the unanimous recommendation of the

Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

48.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  April 20, 2020                    **LEVI & KORSINSKY, LLP**

By:  /s/ *Shannon L. Hopkins*
Shannon L. Hopkins (BBO# 657485)
Sebastiano Tornatore (BBO# 686175)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email:  shopkins@zlk.com
          stornatore@zlk.com

- and -

Donald J. Enright (to be admitted pro hac vice)
Elizabeth K. Tripodi (to be admitted pro hac vice)
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email:  denright@zlk.com
          etripodi@zlk.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on April 20, 2020.

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins